Jacob **KRESHTOOL** and Richard
Beckerbauer, Appellants,

v.

**DELMARVA POWER AND LIGHT CO.,**
Appellee.

Superior Court of Delaware,
New Castle.

July 9, 1973.

Jacob Kreshtool, of Bader, Dorsey & Kreshtool, Wilmington, for appellants.

E. Dickinson Griffenberg, Jr., of Potter, Anderson & Corroon, Wilmington, for appellee.

OPINION AND ORDER ON APPEAL FROM THE STATE COASTAL ZONE INDUSTRIAL BOARD; AFFIRMED

QUILLEN, Judge:

This is an appeal from a final order of the State Coastal Zone Industrial Board (Board) affirming the decision of the State Planner which granted appellee, Delmarva Power & Light Company (Delmarva), a permit to construct an electric generating unit at Edge Moor, Delaware. Jurisdiction of the Court is predicated upon 7 Del.C., § 7008.

On June 20, 1972 Delmarva, pursuant to § 7005 of the recently enacted Coastal Zone Act, directed a request for a permit to the State Planner permitting it to construct and put in service a 400,000 kilowatt

generating unit at a site where it presently operates four similar units. In accordance with the statute, the State Planner held a public hearing on Delmarva's permit application on July 27, 1972. By letter dated September 13, 1972 the State Planner granted Delmarva a Coastal Zone Permit "for construction and operating of a fifth electric generating unit, Edge Moor Unit No. 5, including a cooling system, a fuel storage tank, a 230 KV switchyard, and all other facilities necessary for the operation of Unit No. 5 at the Edge Moor Power Plant as described in the Coastal Zone Permit application of June 20, 1972."

The appellants, who opposed a Delmarva's permit application at the hearing before the State Planner and who represented persons aggrieved by the decision of the State Planner, timely noted on appeal to the Board in accordance with § 7007 of the statute. The mandatory public hearing was held by the Board on November 13, 1972 and eleven days later the Board issued its opinion and order affirming the decision of the State Planner. On December 14, 1972 appellants appealed to this Court from the final order of the Board. Shortly thereafter a dispute arose between the parties over the contents of the record on appeal, which matter was subsequently resolved by a stipulation and order dated April 10, 1973.

By statute the appeal is restricted to but one issue. Section 7008 of the statute provides that "the appeal shall be based on the record of proceedings before the board, the only issue being whether the board abused its discretion in applying standards set forth [in the statute] and regulations issued pursuant thereto to the facts of the particular case." Under the statute, this Court has the power to affirm, alter or reverse the order of the Board.

■ Resolution of this appeal, however, requires some analysis of the facts of this case and of the pertinent statute. In 1971 the Delaware Legislature passed the Coastal Zone Act, an environmental protection statute, which prohibits the construction of new "heavy industry" within the coastal zone—a substantial geographic area that borders on Delaware's waterways. The purpose of the statute is to control the location, extent and type of industrial development that is most likely to pollute Delaware's bays and coastal areas. To this end, the statute creates a permit issuing procedure that requires all new industry seeking development within the coastal zone to obtain a permit. The permit procedure is administered by a State Planner and a Coastal Zone Industrial Control Board.

Under § 7003 of the statute new "heavy industry uses" that were not in operation on the date of enactment of the statute are absolutely prohibited in the coastal zone and no permits may be issued. Industrial uses other than those of heavy industry, that is manufacturing uses, are permitted in the coastal zone but only after a permit has been issued to the applicant by the State Planner. In order to receive a permit, the applicant must establish to the satisfaction of the State Planner that the proposed use is not a heavy industry use. In resolving that question the State Planner must look to the statutory definition of "heavy industry use" set out in § 7002 of the statute and any further elaborations on the definition effected through regulations proposed by him and approved by the Board. To date no such regulations have been approved. If the State Planner determines that the proposed use is not a heavy industry use but is a manufacturing use, he must then pass on such permit requests by considering other factors enumerated in the statute. Those factors include: (1) environmental impact of the proposed use, e. g. air and water pollution, and the nuisance effect of such use, both under normal operating conditions and in the event of equipment malfunctions; (2) its economic effect, e. g., creation of jobs, tax revenues; (3) it aesthetic effect; (4) the impact of probable supporting facilities on the above factors; (5) the effect of the

proposed use, e. g., air and water pollution, and (6) the suitability of the proposed use in terms of county or municipal development and/or conservation plans. 7 Del.C., § 7004.

As grounds for appeal, the appellants contend that the Board abused its discretion by: (1) deciding that the proposed use of Delmarva is not a "heavy industry use"; (2) affirming a decision of the State Planner although the State Planner issued neither a decision nor stated reason for the decision, although required to do so by the statute; and (3) deciding that the proposed use is not a heavy industry use" without stating any reasons for such determination.

On the first ground, the appellants maintain that the generation of electricity as exemplified by the proposed Delmarva facility is a heavy industry use. They argue that the facility possesses the relevant indicia of heavy industry set out in the statutory definition of the term.

" 'Heavy industry use' means a use characteristically involving more than 20 acres and characteristically employing some, but not necessarily all of such equipment such as, but not limited to, smokestacks, tanks, distillation or reaction columns, chemical processing equipment, scribbing towers, pickling equipment, and waste-treatment lagoons; which industry, although conceivably operable without polluting the environment, has the potential to pollute when equipment malfunctions or human error occurs. Examples of heavy industry are oil refineries, basic steel manufacturing plants, basic cellulosic pulp-paper mills, and chemical plants such as petrochemical complexes. Generic examples of uses not included in the definition of 'heavy industry' are such uses as garment factories, automobile assembly plants and jewelry and leather goods manufacturing establishments."

Thus the statute defines heavy industry use not only in terms of its physical characteristics but also in terms of its potential to pollute in the event of equipment failure or human error.

The law in Delaware governing review of agency discretionary decisions is clear. An administrative agency with discretionary power cannot act arbitrarily or capriciously. Spear v. Blackwell & Son, Inc., Del.Super., 221 A.2d 52 (1966); Gunnip v. Lautenklos, 33 Del.Ch. 915, 94 A.2d 712, 716 (Ch.1953). The record must clearly show the basis on which the administrative agency acted in order that its exercise of discretion may be properly reviewed. Phelps Dodge Corp. v. National Labor Relations Board, 313 U.S. 177, 196–197, 61 S.Ct. 845, 85 L.Ed. 1271 (1941); Spear v. Blackwell, supra. Although the reviewing court's inquiry into the record is to be searching and careful, the ultimate standard that it must apply is a normal appellate one. Reversal is warranted if the administrative agency exercised its power arbitrarily, or committed an error of law, or made findings of fact unsupportable by substantial evidence. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). It is immaterial whether the reviewing court would have reached a contrary conclusion from the same evidence. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); Applications of X-Chequer Inn, Inc., Del.Super., 229 A.2d 22, 26 (1967); Stewart v. Delaware Liquor Commission, 6 Terry 363, 74 A.2d 472 (Gen.Sess.1950). However, if the record clearly indicates that the administrative agency made its decision on improper or inadequate grounds, discretion has been abused and reversal upon judicial review is required. Securities & Exchange Commission v. Chenery, 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Moreover, the reviewing court may not affirm the decision of an agency by supplying entirely different factual grounds for "to do so would propel the Court into the domain which the legislature has set aside for the

administrative agency." Applications of X–Chequer Inn, Inc., *supra;* see also Delaware Alcoholic Beverage Commission v. Mitchell, 7 Storey 260, 196 A.2d 410, 412 (Del.Sup.1963).

■ In the instant case, the granting or refusal of an application for a coastal zone permit is a matter resting with the sound discretion of the State Planner and the Board. In reviewing the record before the Board it must be remembered that this Court cannot substitute its own judgment for that of the Board.

■ The record reveals that the appellants attempted to show through the testimony at the hearings below that Delmarva's proposed use possessed the relevant characteristics of heavy industry. Delmarva concedes that the power station has a smoke stack and oil storage tanks, but argues that the power plant is free from the other characteristics of heavy industry. Even appellants concede that the facility has no distillation or reaction columns, chemical processing equipment or pickling equipment, though there is some dispute between the parties as to whether the unit has a waste retention tank. In passing on the question, Delmarva argued below and contends here that weight should be given to two additional factors: (1) the proposed facility, an electric generating unit, is not one of the examples of heavy industry enumerated in the statute, and (2) county and municipal zoning codes classify such units as "General Industrial" and not "Heavy Industrial".

It is reasonably clear from the record that all of the above was argued before the State Planner and later before the Board. It is likewise clear that the Board did not abuse its discretion in applying the statutory standards in making its determination that the Delmarva unit did not have sufficient physical characteristics such as to require that it be classified a heavy industry use. Quite apart from how this Court would have weighed the evidence offered by each side, the record supports the decision of the Board on this question. While it is not discernable from the opinion of the Board, the fact that the other State Departments do not classify such uses, as the one herein involved, as heavy industry gives added support in the record to the Board's decision. This is because the provision defining "heavy industry use" is not intended to be dispositive of all factors to be considered by the Board.

The appellants further argue that as part of the Board's evaluation of the proposed use it must consider not only its physical characteristics but also its "potential to pollute". No doubt the Board must. But here again the record is sufficient to support the Board's decision. There was sufficient evidence in the record to indicate that Delmarva could meet Delaware air quality emissions standards and air quality standards. In fact the permit issued to Delmarva was conditioned upon a continued compliance with pertinent State and Federal Environmental Standards. It is also significant that the record reflects that Delmarva submitted to an agreement to burn low sulphur fuel, thus reducing sulphur dioxide pollution to within acceptable limits as required by state air pollution emissions regulations. The record also indicates that nitrogen oxide emissions as well as particulate emissions will be within acceptable Federal and State limitations. Moreover, while some contrary evidence exists in the record regarding the above, the discretionary power of the Board is not so constrained by statutory standards as to constitute an abuse thereof if there exists the slightest possibility that anti-pollution standards may be exceeded. Surely most if not all industrial plants contribute in some way to our present environmental crisis. That very reality, common sense dictates, prompted the legislature to place the task of issuing permits in an administrative agency equipped with sufficient discretion to balance the interest in industrial development against a growing concern for environmental protection.

Consequently, I find that the decision of the Board in not classifying the Delmarva facility a "heavy industry use" to be supported by substantial evidence in the record and that the Board did not abuse its discretion in applying the standards set out in the statute.

Two further issues are raised by the appellants. First, the appellant contends that the Board abused its discretion by affirming a decision of the State Planner although the State Planner issued neither a decision nor stated reasons for the decision as required by the statute. The pertinent provision provides:

"The state planner shall then, if he determines that § 7004 applies, reply to the request for a permit within 90 days of receipt of the said request for permit, either granting the request, denying same, or granting the request but requiring modifications; he shall state the reasons for his decision." 7 Del.C., § 7005.

This provision, as applied to the instant case, required the State Planner to state the reasons for his decision granting Delmarva the permit. Appellants argue that the State Planner's "decision" came in the form of a letter dated September 13, 1972 which was sent by the State Planner to the Vice President of Delmarva. They further argue that in the letter the State Planner simply informed Delmarva that the application for the permit had been granted but did not state his reasons for the decision. In fact no reasons were stated at that time, though the letter did state, in a general way, the conditions attached to the issuance of the permit. Delmarva argues, however, that, at the appeal hearing before the Board on November 13, 1972, the State Planner, in a comprehensive statement, stated the reasons for his decision and that the statutory requirement was therefore satisfied. That the State Planner's statement at the hearing was an adequate statement of the reasons for his decision is not in dispute. The only issue here is whether that statement satisfied the procedural requirements of the statute, though it came after the date the permit was granted and after the expiration of the 90 day period within which the State Planner must make his decision and state his reasons. 7 Del.C. § 7005.

In resolving this issue it is important to note some general rules governing the exercise of power by administrative agencies. The powers of an administrative agency must be exercised in accordance with the statute conferring power upon it. An agency's authority to act depends upon compliance with the procedural provisions laid down in the statute, at least such as are deemed mandatory and involve matters of substance and not mere technicalities. 2 Am.Jur.2d, § 354. It is also true that absolute conformity of the agency to statutory procedural rules is not required, so long as there is substantial compliance therewith and no prejudice is claimed by the parties. Witmer v. United States, 348 U.S. 375, 384, 75 S.Ct. 392, 397 99 L.Ed. 428 (1955). Cf. Wichita R.R. & Light Co. v. Public Utilities Comm'n, 260 U.S. 48, 43 S.Ct. 51, 67 L.Ed. 124 (1922).

In the present case, it does seem clear that the requirement that the State Planner "state reasons" is mandatory and not a "mere technicality". The requirement serves two essential functions. First, it enables the Board to adequately review the decision of the State Planner. Second, it enables persons aggrieved by an adverse decision of the State Planner to prepare for their appeal before the Board. However, under the facts of the instant case it is clear that there was no violation of the purposes behind the statutory provision. The State Planner appeared and testified before the Board at the appeal hearing. His statement of the reasons for his decision became part of the record which was considered by the Board in reviewing that decision. Furthermore, the appellants have claimed no prejudice by any delay on the part of the State Planner in verbalizing the reasons for his decision. Indeed, in

accordance with the discussion at oral argument, it appears the point was not raised below. This Court cannot assume the appellants were prejudiced by the delay in learning the specific reasons underlying the State Planner's decision. The omission is not such a fundamental mistake that it voids the proceedings without a showing of prejudice.

I find that, although the State Planner's failure to comply with the literal terms of § 7005 was error, it is not reversible error under the facts of this case. Therefore, the Board did not abuse its discretion in affirming the decision of the State Planner despite his technical non-compliance with the statute and reversal on this ground is not appropriate on judicial review.

■ Finally, the appellants contend that the Board abused its discretion by deciding that the proposed use is not a "Heavy Industry Use" without stating any reasons for such a determination. However, the statute requires only that upon appeal to the Board "the . . . board must hold a hearing and render its decision in the form of a final order." 7 Del.C., § 7007. Therefore, unlike the decision of the State Planner, there is not statutory command compelling the Board to state reasons for its decision.

■ Nevertheless, in order for this Court to adequately review the Board's decision it is necessary that sufficient findings of fact be made by the Board. It must be evident from the decision and from the record below that the Board's decision was based on a consideration of the relevant factors. Citizens to Preserve Overton Park v. Volpe, *supra* at 401 U.S. at 416, 91 S.Ct. 814.

■ In its decision the Board made the following findings of fact: (1) the proposed use is not a "heavy industry use"; and (2) the proposed use is a manufacturing use which may be constructed in the coastal zone upon the issuance of a permit. It is clear from the decision that the Board considered both the relevant physical characteristic of the generating unit and its potential to pollute. Admittedly, the step by step reasoning of the Board in arriving at these facts is not recited in its decision. However, it is clear from the record of the proceedings below that the appellants did not establish to the satisfaction of either the State Planner or the Board that the Delmarva unit had sufficient indicia of heavy industry to justify its classification as such.

The decision of the Board further reflects that the Board considered all the relevant factors set out in the statute in passing on the question of whether a permit should have been issued by the State Planner. The statute lists the following factors: environmental impact, economic effect, aesthetic effect, supporting facilities, effect on neighboring land uses and county and municipal comprehensive plans. In evaluating these factors, the Board considered the transcript of the hearing before the Board, the complete application of Delmarva and supporting memoranda submitted by counsel. Much of the evidence that was presented to the Board was of a sophisticated and technical nature. In reviewing such evidence the Board made the necessary findings on the relevant criteria set out in the statute and such findings are supported in the record by substantial evidence.

This Court is not empowered to supplant the sound judgment of the Board with its own. It cannot be said, under the facts of this case, that the Board committed a "clear error of judgment" or that it based its decision on improper or inadequate grounds.

For the reasons stated above, the decision of the State Coastal Zone Industrial Control Board is affirmed. It is so ordered.