# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
# IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| **BEACH BABIES CHILD CARE, INC.,** | : | |
| | : | **C.A. No: K14A-06-009 RBY** |
| _____Appellant, | : | |
| | : | |
| v. | : | |
| | : | |
| **JEREMY HURD, and THE** | : | |
| **UNEMPLOYMENT INSURANCE** | : | |
| **APPEALS BOARD,** | : | |
| | : | |
| Appellees. | : | |

*Submitted: December 3, 2014*
*Decided: January 23, 2015*

***Upon Consideration of Appellant's Appeal from***
***the Unemployment Insurance Appeal Board***
**REMANDED**

**OPINION and ORDER**

Richard E. Berl, Jr., Esquire, Berl & Feinberg, LLP, Lewes, Delaware for Appellant.

Jeremy Hurd, *Pro se.*

Paige J. Schmittinger, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware for The Unemployment Insurance Appeals Board.

Young, J.

## SUMMARY

Beach Babies Child Care, Inc., ("Appellant"), appeals the decision of the Unemployment Insurance Appeals Board ("the Board") finding that Jeremy Hurd ("Appellee"), was discharged without just cause; and, accordingly, is qualified to receive unemployment benefits. Following an investigation into an alleged incident involving a child in the Appellee's care, Appellee was suspended and ultimately fired for allegedly violating provisions of the employee handbook. The Department of Labor ("the Department") issued a decision disqualifying Appellee from receiving benefits, finding he had been terminated for just cause. The Appeals Referee reversed. On appeal, the Board affirmed the decision of the Referee. This Court finds that the Board's decision is deficient as to findings of fact and conclusions of law, accordingly, the decision of the Board is **REMANDED** in accordance with this opinion.

## FACTS AND PROCEDURAL POSTURE

Since the Board, after taking additional testimony of witnesses, affirmed the Referee's determination and adopted his factual findings as those of the Board, the Court begins by restating the factual findings made by the Appeals Referee, substantially in their entirety:

> [Appellee] was employed as an early Childhood teacher by [Appellant] from 2001 through November 22, 2013. The [Appellee] was employed full-time at an hourly rate of $14.25. [Appellee] was doing a counting activity during circle time on November 19, 2013. Children were called into the middle of the circle to be counted. One of the children was lying in the middle of the circle. [Appellee] asked him to move to the outside of the circle so he would not get stepped on or trip other children. When the child would not move,

[Appellee] pulled him by his legs and slid him to the outside of the circle. [Appellee] stated he wanted to move, not hurt or harm the child. The child told [Appellee] his back hurt. The next day, the child's parent reported he had a rug burn on his back. [Appellant] said the parent said the child said [Appellee] was upset when he pulled him. [Appellant] investigated and reviewed video surveillance. [Appellant] contends [Appellee] pulled the child aggressively and then pushed him down and turned his head with his hands. [Appellant] suspended [Appellee] and reported the incident to the Delaware Department of Service for Children, Youth and Their Families for investigation. [Appellant] terminated Claimant on November 25, 2013, for inappropriate abusive or neglectful behavior in violation of its handbook.[1]

At its hearing, the Board accepted additional testimony, which it summarized as follows:

[Appellant's] representative Tom Toner was sworn and testified that the incident causing [Appellee's] termination was on video. A copy of the video was received into evidence as employer's Exhibit 1, and played at the hearing.

[Appellant's] representative also testified that the mother of the child who was allegedly injured by the [Appellee] could not take off of work to testify. Therefore, a photo allegedly taken by the child's mother to show the child's physical harm was not received into evidence, because a proper evidentiary foundation could not be established. [Appellant's] representative also testified that Appellant maintains a safe, warm educational environment, and [Appellant's] reputation is based upon how [Appellant] takes care of children.

[Appellee] was sworn and testified that on the day in question, he was left alone in a room with children. He stated that there should be one teacher for every 12 children. He explained that he had just cleaned up for breakfast

---

[1] R. at 69-70.

3

and was getting the children focused. He stated that a child was moved. He noted that he was not interviewed by DHSS (Division of Health and Social Services). He stated that he did not want the child to be harmed. In the morning, the [Appellant] did not check the child's back. He also recalled the child did not cry that he was harmed or hurt.

[Appellant's] witness Latisha Lewis was sworn and testified that later in the video, the child comes back to the [Appellee] and points to his back, as though his back hurt.[2]

Both the Appeals Referee and the Board ultimately concluded that Appellee was not terminated for just cause, finding that he was, therefore, entitled to receive unemployment benefits. The Appeals Referee found that Appellant "failed to establish the content of the policy [Appellee] is alleged to have violated."[3] In affirming the Appeals Referee, the Board stated, "[t]he [video] recording shows that [Appellee] moved the child during circle time. However, the recording does not establish by a preponderance of the evidence that the child was injured (*e.g.*, received a rug burn) by the [Appellee's] actions."[4] After briefly explaining their rational for excluding photographic evidence of alleged physical injury to the child – classifying it as hearsay statements – the Board went on to conclude, "[a]s a result, there is no conclusive evidence in the record that [Appellee] physically injured a child during circle time on November 19, 2013."[5]

---

[2] R. at 107-08.

[3] R. at 71.

[4] R. at 109.

[5] *Id*.

4

Appellant now urges this Court to reverse the Board, claiming: (1) the Board committed legal error in their classification and interpretation of the evidence; and (2) the Board's decision was not supported by substantial evidence and was both arbitrary and capricious.

## STANDARD OF REVIEW

For administrative board appeals, this Court is limited to reviewing whether the Board's decision is supported by substantial evidence and free from legal errors.[6] Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[7] It is "more than a scintilla, but less than preponderance of the evidence."[8] An abuse of discretion will be found if the board "acts arbitrarily or capaciously...exceeds the bounds of reason in view of the circumstances and has ignored recognized rules of law or practice so as to produce injustice."[9] Accordingly, "if the record clearly indicates that the administrative agency made its decision on improper or inadequate grounds, discretion has been abused and reversal upon judicial review is

---

[6] 29 *Del. C.* § 10142(d); *Avon Prods. v. Lamparski*, 203 A.2d 559, 560 (Del. 1972).

[7] *Majaya v. Sojourners' Place*, 2003 WL 21350542, at *4 (Del. Super. June 6, 2003).

[8] *Id.* (quoting *Cross v. Calfano*, 475 F.Supp. 896, 898 (M.D. Fla. 1979)).

[9] *Delaware Transit Corp. v. Roane*, 2011 WL 3793450, at *5 (Del. Super. Aug. 24, 2011) (quoting *Straley v. Advanced Staffing, Inc.,* 2009 WL 1228572, at *2 (Del. Super. Apr. 30, 2009)).

required."[10] In review of the Boards decision, the Court does not weigh evidence, determine questions of credibility, or make its own factual findings.[11] Where an agency has interpreted and applied a statute, the court's review is *de novo*.[12] In the absence of an error of law, lack of substantial evidence or abuse of discretion, the Court will not disturb the decision of the board.[13]

## DISCUSSION

The Board affirmed the decision of the Appeals Referee pursuant to 19 *Del. C.* § 3320(a), finding that no error had been committed in the Referee's determination. The Referee's decision was based upon 19 *Del. C* . § 3314(2), which states in relevant part that an individual shall be disqualified for unemployment benefits, "for the week in which the individual was discharged from the individual's work for just cause in connection with the individual's work..."[14] This Court has explained:

> [i]n a [discharge] situation, the employer has the burden of proving just cause. Employee performance and conduct is highly relevant in assessing just cause. Absent evidence to the contrary, an employer necessarily sets the standard for acceptable workplace conduct and performance. Just cause

---

[10] *Kreshtool v. Delmarva Power & Light Co.*, 310 A.2d 649, 652 (Del. Super. 1973) (citing *Securities & Exchange Commission v. Chenery*, 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947)).

[11] *Id*.

[12] *Lehman Brothers Bank v. State Bank Commissioner,* 937 A.2d 95, 102 (Del. 2007).

[13] *Anchor Motor Freight v. Ciabattoni,* 716 A.2d 154, 156 (Del. 1998).

[14] 19 *Del. C.* § 3314(2).

refers to a wilful or wanton act in violation of either the employer's interest, or of the employee's duties, or of the employee's expected standard of conduct.[15]

Willful or wanton conduct is that which is evidenced by either conscious action, or reckless indifference leading to a deviation from established and acceptable workplace performance; it is unnecessary that it be founded in bad motive or malice.[16]

Therefore, "[v]iolations of a reasonable company rule may constitute just cause for discharge if the employee is aware of the policy and the possible subsequent termination."[17] The employer need not demonstrate a recurring offense; rather, "[j]ust cause can result from an isolated act by an employee that shows contempt for the acceptable procedures of the employer."[18] This Court uses a two-step test to evaluate whether a violation of an alleged policy would justify a just cause discharge: "1) whether a policy existed, and if so, what conduct was prohibited, and 2) whether the employee was apprised of the policy, and if so, how

---

[15] *MRPC Fin. Mgmt. LLC v. Carter*, 2003 WL 21517977, at *4 (Del. Super. June 20, 2003) (internal citations and quotations omitted).

[16] *Still v. Burris Logistics*, 2011 WL 4135123, at *1 (Del. Super. May 5, 2011) (citations omitted); *Coleman v. Department of Labor*, 288 A.2d 285, 288 (Del. Super. 1972).

[17] *Wilson v. Unemployment Ins. Appeal Bd.*, 2011 WL 3243366, at *2 (Del. Super. July 27, 2011) (citing *McCoy v. Occidental Chem. Corp.*, 1996 WL 111126, at *3 (Del. Super. 1996)).

[18] *Edgemoor Cmty. Ctr. v. Black*, 2011 WL 7457651, at *3 (Del. Super. Oct. 25, 2011) (citing *Mergliano v. Unemployment Ins. Appeal Bd.*, 2009 WL 3069676, *2 (Del. Super. Sept.16, 2009).

was he made aware."[19] Enforceable notice may be established by, "evidence of a written policy, such as an employees' handbook or by previous warnings of objectionable conduct."[20] Finally, "any decision by the Board that a claimant was discharged *without* just cause must be based on findings of fact and conclusions of law adequate to support such a decision. A Board's determination that a claimant was discharged without just cause is deficient where it does not address the allegations culminating in and the evidence supporting the discharge.[21]

In addition to the evidence presented to the Appeals Referee, the Board heard testimony from Appellant's representative Tom Toner, Latisha Lewis and the Appellee. Tom Toner testified that the incident causing Appellee's termination was on the video, which was admitted into evidence as Exhibit one.[22] He further testified that Appellant, as a matter of course, maintains a safe, warm educational environment, and that Appellant's reputation is based upon how Appellant takes care of children.[23] He testified that the Appellee's actions were contrary to the company's policies which the Appellee had signed off on in 2001, 2008 and 2011.[24] The Appellee testified that he did not intend to hurt the child, and the child

---

[19] *Id.*

[20] *Wilson*, 2011 WL 3243366, at *2.

[21] *Edgemoor Cmty. Ctr.*, 2011 WL 7457651, at *3 (internal citations and quotations omitted).

[22] R. at 94.

[23] R. at 96.

[24] R. at 97.

showed no apparent signs of injury.[25] The Board did not admit or consider a photograph, which the Appellant claims was proof the child was injured, because the child's mother was not there to lay a proper foundation.[26]

Based on this evidence, the Board found that Appellant failed to establish by a preponderance of the evidence that the child was injured by the Appellee's actions.[27] Because there was no conclusive evidence that the Appellee injured the child, the Board determined the Appellant was discharged from his employment without just cause.[28]

The Board's findings, however, are legally flawed. The proper legal standard does not turn on whether or not the child was injured. Rather, the issue is whether or not the Appellee's conduct was "reckless[ly] indifferen[t] leading to a deviation from established and acceptable workplace performance..."[29]

In *Edgemoor Cmty. Ctr. v. Black*, a similar case, this Court concluded the Board's decision, that a childcare provider's termination was not based on just cause, constituted legal error because it did not take into consideration the childcare provider's behavior pursuant to the employer's standards.[30] In making its

---

[25] R. at 98-100.

[26] R. at 107.

[27] R. at 109.

[28] *Id*.

[29] *MRPC Fin. Mgmt. LLC*, 2003 WL 21517977, at *4.

[30] *Edgemoor Cmty. Ctr.*, 2011 WL 7457651, at *3.

determination, the Court noted that the Board's decision "did not discuss any interest, duty, or standard of conduct of the [employer] in relation to [the childcare provider's] conduct."[31] Instead, the Board made its determination that the employer did not meet its burden of persuasion without any discussion of what it is that the employer needed to show.[32] Finally, the Court noted, "[w]ithout a comparison of [the childcare provider's] conduct to the [employer's] standards ... there can be no legally sufficient decision regarding whether the [employer] had just cause to terminate [the child care provider]."[33]

Because the Board's focus was almost exclusively on whether or not the child was injured, and not Appellee's actual conduct compared to Appellant's established standards, the Board committed legal error. Again, the proper legal analysis involves a two part test, (1) whether a policy existed, and if so, what conduct was prohibited, and (2) whether the employee was apprised of the policy, and if so, how was he made aware. Similar to *Edgemoor Cmty. Ctr*, the Court finds that the Board's decision is deficient as to findings of fact and conclusions of law regarding whether Appellee's conduct – pulling a child by the feet, pushing him down, and moving his head – was recklessly indifferent, leading to a deviation from Appellant's established and acceptable workplace performance. Accordingly, the decision of the Board is **REMANDED** in accordance with this

---

[31] *Id.*

[32] *Id.*

[33] *Id.*

opinion.

         **IT IS SO ORDERED**.

                                     /s/ Robert B. Young
                                              J.

RBY/lmc
oc:    Prothonotary
cc:    Counsel
         Jeremy Hurd, *Pro se*
         Opinion Distribution
         File