**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**
**IN AND FOR SUSSEX COUNTY**

| | |
|---|---|
| **BERNARD HONAKER,** ) | |
| ) | |
| ) | |
| **Appellant,** ) | |
| ) | |
| **v.** ) | **C.A. No. S14A-12-003 MJB** |
| ) | |
| **ENTERPRISE LEASING CO. AND** ) | |
| **UNEMPLOYMENT INSURANCE** ) | |
| **APPEALS BOARD** ) | |
| ) | |
| ) | |
| **Appellees.** ) | |

**Submitted:** May 7, 2015
**Decided:** August 19, 2015

*Upon Appellant's Appeal from the Unemployment Insurance Appeals Board,* **AFFIRMED.**

**OPINION**

Bernard Honaker, Jr., 25486 Smith Way, Milton, Delaware 19968, *pro se,* Appellant.

Paige Schmittinger, Esq., Deputy Attorney General, 820 North French Street, Wilmington, Delaware 19801, Attorney for Appellee Unemployment Insurance Appeal Board.

**BRADY, J.**

1

## I. INTRODUCTION

Appellant Bernard Honaker, Jr. ("Appellant," "Honaker") became separated from his employer Enterprise Leasing Co. ("Enterprise") on July 17, 2014.[1] Appellant claimed that he was terminated and hence was eligible for unemployment benefits. Enterprise initially claimed that Appellant voluntarily resigned, a position adopted by the Claims Deputy who initially reviewed Honaker's claim. Upon appeal, the Appeals Referee determined that Honaker was in fact terminated but that he was still ineligible for benefits because he was terminated for cause. The Unemployment Insurance Appeals Board ("UIAB") refused to hear Honaker's appeal of the Claims Referee's decision on the grounds that it was untimely. Honaker now appeals the UIAB ruling to this Court. Honaker has submitted an opening brief.[2] The UIAB has declined to file an answering brief and chosen to rest on the Record.[3] Enterprise has not filed an answering brief or otherwise responded. The Court, on May 7, 2015, took the matter under consideration on the submissions received by that date.[4]

For the following reasons, the Court **AFFIRMS** the decision of the UIAB.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Appellant was employed by Enterprise from November 15, 2007 until July 17, 2014.[5] Appellant worked primarily at Enterprise's Rehoboth location.[6] Appellant alleges that on July 17, 2014, his supervisor ordered him to work for the day at Enterprise's Millsboro location.[7] The Millsboro location, unlike the Rehoboth location, has an enclosed garage and no air

---

[1] Record at 1.
[2] Opening Brief, Docket Item 5.
[3] Letter, Docket Item 6.
[4] Order, Docket Item 8.
[5] Record at 1.
[6] Record at 3. Appellant states that he was specifically hired for the Rehoboth location. Opening Brief at *3.
[7] Record at 26.

conditioning.[8] Appellant says that he refused, due to his health issues and the fact that there were younger employees who could go, one of whom volunteered to go in Appellant's place.[9] Appellant claimed that he was terminated for his refusal, but Enterprise maintained that Appellant voluntarily resigned.

### A. Initial Determination of Ineligibility and Honaker's First Appeal

On August 4, 2014, Honaker applied for unemployment benefits.[10] The Claims Deputy charged with making the initial determination regarding eligibility found that Honaker "quit for personal reasons not attributable to work," and hence was neither fired nor resigned with good cause.[11] Honaker appealed the Claims Deputy's decision to the Appeals Referee, asserting that he did not resign but instead was fired.[12] A hearing in front of the Appeals Referee was held on September 16, 2014.[13]

### i. Honaker's Testimony

At the hearing, Honaker testified that he walked in the door on Monday morning and his supervisor told him to go to the Millsboro location.[14] Honaker testified that he told the supervisor that he was not going to Millsboro and "if you don't want me to work, I'll go home."[15] Honaker said the supervisor turned around, and Honaker then went out to his car to leave.[16] Honaker said that as he was heading to his car, another employee, John, came outside to

---

[8] Record at 28.
[9] Opening Brief, Docket Item 5, at *3.
[10] Record at 1.
[11] Record at 12.
[12] Record at 15-16.
[13] Record at 18.
[14] Record at 26.
[15] Record at 26.
[16] Record at 26.

get him and told Honaker "don't go like this."[17] John went back inside and told the supervisor that he would go in Honaker's place, but the supervisor refused and said that she wanted Honaker to go to Millsboro.[18]

Honaker testified that he proceeded on home.[19] About two or three hours later, Honaker spoke with his supervisor by phone. Honaker testified that the supervisor asked him whether he would go to Millsboro if directed to do so in the future, and that he told her "I don't know. We'll have to cross that bridge when we come to it."[20] Honaker said that the supervisor responded, "I guess we're having an impasse," prompting him to ask if he was fired.[21] Honaker said that the supervisor then told him, "I guess you are."[22] Honaker testified that although he had worked at Millsboro "off and on" before, he did not want to go there because the set-up (an enclosed garage with no air conditioning) exacerbated his health conditions.[23] Honaker testified that he had discussed his reasons for not wanting to go to Millsboro with his employer at several points in the past.[24]

*ii. Supervisor's Testimony*

Honaker's supervisor testified that when she told Honaker to go to Millsboro, he specifically told her "if I go down to Millsboro I am going home."[25] The supervisor said that she replied, "well, I need you to go to Millsboro. So, in other words, I guess you're going home," and Honaker left.[26] The parties later spoke by phone. The supervisor testified that she asked Honaker whether he had resigned his job by refusing to go to Millsboro, and that Honaker said

---

[17] Record at 27.
[18] Record at 27.
[19] Record at 27.
[20] Record at 27.
[21] Record at 27.
[22] Record at 27.
[23] Record at 28.
[24] Record at 26, 28.
[25] Record at 30.
[26] Record at 30.

no and that he would be at work on the following Wednesday.[27]  The supervisor says she then asked whether Honaker would go to Millsboro on Wednesday if she directed him to do so, and he replied that he would refuse to go.[28]  The supervisor testified that Honaker told her that he did not like going to Millsboro because "all I do is clean cars" there.[29]  The supervisor said that she told Honaker that cleaning cars is his job and therefore he is telling her than he cannot do his job.[30]  The supervisor testified that she then told Honaker that if he could not do his job "at this point it's best if we part ways."[31]  She testified that Honaker then said, "well if you're going to fire me then go ahead and fire me," to which she responded, "fine I'll have HR send you your paperwork."[32]  Enterprise entered a copy of its policy on insubordination termination as an exhibit, and Honaker did not object.[33]  Honaker's supervisor testified that Honaker had received and signed a copy of the policy, but Honaker denied ever receiving a copy.[34]

Upon additional questioning from Honaker, the supervisor gave a slightly different account of her phone exchange with Honaker.  She confirmed that when she asked him whether he would refuse to go to Millsboro in the future, he said "cross the bridge when we get to it."[35]  The supervisor said that she then told Honaker that she could not take this risk in running a business, which prompted Honaker to ask if he was fired, and the supervisor told him yes.[36]

---

[27] Record at 30.
[28] Record at 30.
[29] Record at 30.
[30] Record at 30.
[31] Record at 30.
[32] Record at 30.
[33] Record at 33-34.
[34] Record at 34.
[35] Record at 36.
[36] Record at 36.

*iii. Appeals Referee's Determination*

The Appeals Referee determined that based on the hearing testimony, Honaker was in fact terminated and did not voluntarily resign.[37] However, the Appeals Referee determined that Honaker was still ineligible for unemployment benefits because he was terminated with cause.[38] The Appeals Referee found that Enterprise had established just cause by a preponderance of the evidence, where just cause is constituted by "a willful or wanton act either in violation of the employer's interests, the employee's duties, or the employee's expected standard of conduct."[39] The Appeals Referee found Honaker's conduct "willful or wanton" because "he was recklessly indifferent to the consequences to his employment."[40] The Appeals Referee explained that "[b]y refusing to obey his supervisor, [Honaker] was acting against Employer's interest and against his expected standard of conduct."[41] The decision of the Appeals Referee stated that under 19 *Del. C.* §3318, any interested party has the right to appeal to the UIAB "within 10 days after the date of notification or mailing of such decision."[42] The Appeals Referee certified that a copy of the decision was mailed to Honaker on October 17, 2014.[43]

**B. Appeal to the Unemployment Insurance Appeal Board**

Honaker appealed the decision of the Appeals Referee to the UIAB in a letter postmarked November 10, 2014.[44] Honaker acknowledged that his appeal was tardy but asked that the UIAB take into consideration that he was hospitalized and in rehab for knee surgery from

---

[37] Record at 46.
[38] Record at 46 (*citing* 19 *Del. C.* §3314(2)).
[39] Record at 47 (*citing Majaya v. Sojourner's Place*, 2003 WL 21350542, *4 (Del. Super. Ct. June 6, 2003)).
[40] Record at 47. The Appeals Referee cites the standard for "willful or wanton" conduct as requiring a showing that "one was conscious of his conduct or recklessly indifferent [to] its consequences." Record at 47 (*citing Coleman v. Department of Labor*, 288 A.2d 285 (Del. Super. Ct. 1972)).
[41] Record at 47.
[42] Record at 44.
[43] Record at 48.
[44] Record at 53.

6

October 21, 2014 to November 6, 2015.[45] The UIAB declined to accept the untimely appeal, on the grounds that the ten day appeal window is jurisdictional and can only be overridden under "severe circumstances."[46] The UIAB found no such severe circumstances in the instant case where notice was mailed to Appellant's address of record and was not returned and the first page of the Appeals Referee's decision clearly displayed a notice of the right of appeal, instructions on how to appeal, and the following notice: "Last Day to File Appeal: 10/27/2014."[47] The UIAB found no evidence of administrative error that prevented Honaker from receiving notice or filing a timely appeal, and concluded that Honaker had been given notice and opportunity to be heard sufficient to satisfy the requirements of due process.[48]

### C. Appeal to Superior Court

Honaker filed a timely appeal of the UIAB decision to Superior Court.[49] In his opening brief, Honaker contends that the UIAB should have excused his tardiness because he was in the hospital and then in rehab after surgery.[50] Honaker alleges that the UIAB engaged in "health discrimination" in not hearing his appeal, which he says was late due to his hospitalization.[51] Regarding the merits of the Appeals Referee's decision, Honaker argues that his dismissal from Enterprise was not justified. Honaker argues that he was "an outstanding employee," according to "many reviews," until he began having health problems.[52] Honaker says that he was diagnosed with bladder cancer in July 2013.[53] Honaker cites a November 1, 2013 performance

---

[45] Record at 51.
[46] Record at 55.
[47] Record at 55.
[48] Record at 55.
[49] Record at 60.
[50] Opening Brief, Docket Item 5, at *2.
[51] Opening Brief, Docket Item 5, at *2.
[52] Opening Brief, Docket Item 5, at *2.
[53] Opening Brief, Docket Item 5, at *2.

review in which his employer acknowledged his "several health issues," but still found that Honaker was performing well.[54] Honaker subsequently took medical leave from Enterprise while he was undergoing chemotherapy; he returned to work around the end of March or beginning of April 2014.[55] Honaker alleges that "attitudes changed drastically towards him" when he returned to work after his medical leave.[56]

Honaker also suffers from chronic obstructive pulmonary disorder ("COPD"). Honaker says that prior to the July 17, 2014 incident that resulted in his termination, he had been sent to the Millsboro location several times.[57] Honaker says that while working at Millsboro, he found that the enclosed conditions with restricted air flow exacerbated his COPD.[58] Honaker alleges that he told management "on numerous occasions" of the problems that working at Millsboro caused for his health.[59] Further, Honaker maintains that he was hired to work at the Rehoboth site and that there was nothing in his job description requiring him to work at sister Enterprise sites.[60]

Concerning the July 17, 2014 incident, Honaker maintains he was targeted by his supervisor who insisted that Honaker go to Millsboro despite knowing of Honaker's medical condition and despite another employee's having volunteered to take Honaker's place.[61] Honaker suggests that the supervisor's refusal to send the other employee was unreasonable because he was the very same employee that the supervisor would have sent to Millsboro had Honaker not been there that day.[62] Honaker alleges that Enterprise's firing him on the basis of

---

[54] Opening Brief, Docket Item 5, at *2.
[55] Opening Brief, Docket Item 5, at *2.
[56] Opening Brief, Docket Item 5, at *2.
[57] Opening Brief, Docket Item 5, at *3.
[58] Opening Brief, Docket Item 5, at *3.
[59] Opening Brief, Docket Item 5, at *3.
[60] Opening Brief, Docket Item 5, at *3.
[61] Opening Brief, Docket Item 5, at *3.
[62] Opening Brief, Docket Item 5, at *3.

8

this incident alone was unreasonable and discriminatory. Honaker says that he was an excellent employee with no prior write-ups or other incidents.[63] Honaker alleges that the decline in his health lead his employer to target him because he was "viewed as a health liability."[64] He argues that he was discriminated against due to his health condition, which is a disability, and that his employer "harassed" him by continually insisting on sending him to work in conditions that the employer knew put Honaker's health at risk.[65] Honaker claims that his refusal to go to Millsboro was not unjustified insubordination, but rather him "assert[ing] his rights."[66]

### III. LEGAL STANDARD

This Court's appellate review of a UIAB decision is limited. Provided that the Board's findings and conclusions are "free from legal error and supported by substantial evidence in the record," the Board's decision must stand even if the Court would have decided otherwise.[67] Substantial evidence is "such relevant evidence such as a reasonable mind might accept as adequate to support a conclusion."[68] "A discretionary decision of the Board will be upheld absent an abuse of discretion."[69] Abuse of discretion occurs when the Board "acts arbitrarily or capriciously"[70] or "exceeds the bounds of reason."[71] In deciding the appeal, the Superior Court

---

[63] Opening Brief, Docket Item 5, at *3.
[64] Opening Brief, Docket Item 5, at *4.
[65] Opening Brief, Docket Item 5, at *4.
[66] Opening Brief, Docket Item 5, at *4.
[67] *Straley v. Advanced Staffing*, 2009 WL 1228572, *2 (Del. Super. Ct. Apr. 30, 2009) (*citing PAL of Wilmington v. Graham*, 2008 WL 258986, at *3 (Del. Super. Ct. June 18, 2008)).
[68] *Id.* (*quoting Anchor Motor Freight v. Ciabottoni*, 716 A.2d 154, 156 (Del .1998)).
[69] *Id.* (*citing Funk v. Unemployment Ins. Appeal Bd.*, 591 A.2d 222, 225 (Del.1991)).
[70] *Id.* (*quoting Kreshtool v. Delmarva Power & Light*, 310 A.2d 649, 652 (Del. Super. Ct. 1973)).
[71] *Id.* (*quoting Nardi v. Lewis*, 2000 WL 303147, at *2 (Del.Super.Jan.26, 2000)

9

is limited to the record before the Board at the time the Board made its decision; the Court may not consider additional documentation.[72]

## IV. ANALYSIS

Under 19 *Del. C.* §3318(c), the decision of an appeals referee "shall be deemed to be final unless with 10 days after the date of notification or mailing of such decision further appeal in initiated pursuant to §3320 of this Title." When notification is sent by mail, the ten-day period begins to run on the date of mailing unless the notification fails to reach the claimant due to a mistake by employees of the Department of Labor.[73] However, the Board has discretion under 19 *Del. C.* §3320 to consider a case *sua sponte*, despite the defects of the claimant's appeal, under rare, severe circumstances where the interests of justice would not be served unless the Board heard the case.[74]

In *Funk*, the claimant filed his appeal to the UIAB five days late.[75] The decision of the appeals referee was sent by mail and was correctly addressed to the claimant at his home address. However, due to a mistake by the postal service, the decision was delivered to the claimant's parents' home, which was located on the same street.[76] The claimant said he did not receive the decision until four days after the appeal deadline, and he filed his belated appeal the very next day.[77] The claimant said that this was not the first time that his mail had mistakenly beem delivered to his parents' home, and he did not know how long the decision sat at his

---

[72] *Tibbits v. UPS,* 2012 WL 6849444, *1 (Del. Super. Ct. Oct. 31, 2012) ("On appeal, the Court does not receive additional evidence nor does it make independent factual findings. Instead, the standard for review is simply whether the findings and conclusions of the Board are supported by substantial evidence and free of legal error. As such, the Court's review is limited to the record created before the Board and the findings contained in the Board's decision").

[73] *Funk,* 591 A.2d at 224.

[74] *Id*. at 225.

[75] *Id.* at 224.

[76] *Id.*

[77] *Id.*

parents' home before he received it.[78] The UIAB declined to hear the appeal on the merits because it was untimely.[79]

On appeal, the court upheld the decision of the UIAB, and the Supreme Court affirmed. While the Supreme Court acknowledged the ability of the UIAB to act *sua sponte* to consider a case outside the designated period of appeal in limited cases so as to prevent injustice, the Court did not find this necessary under the circumstances where the delay in receipt of the decision was not due to any error on the part of the Department of Labor.[80] The Court reasoned that the claimant had "not established that he was free from fault in his failure to receive notice of the referee's decision within the ten-day appeal period" as the claimant had admitted that his mail was sometimes misdelivered to his parents' home.[81] The Court reasoned that it is reasonable to expect that a claimant who is awaiting an important decision by mail and is aware of this ongoing delivery problem to check with his parents regularly.[82] Further, the Court pointed out that there was no evidence in the record that the claimant ever complained to the postal service or attempted to have this problem remedied.[83]

In *Wilson v. Masten Lumber*, the court reached a similar decision.[84] The claimant in *Wilson* filed an untimely appeal of the Claims Deputy's decision to the Appeals Referee.[85] The Appeals Referee refused to hear the appeal on the grounds that it was untimely.[86] The Appeals Referee noted that there was no evidence that there had been any error by the Department of

---

[78] *Id.*
[79] *Funk*, 591 A.2d at 223.
[80] *Id.* at 225.
[81] *Id*. at 226.
[82] *Id.*
[83] *Id.*
[84] *Wilson v. Masten Lumber*, 1993 WL 590326 (Del. Super. Ct. Dec. 21, 1993).
[85] *Id.* at *1.
[86] *Id.*

Labor in mailing the decision to the claimant.[87] The claimant appealed to the UIAB, arguing that his appeal was late because he never received that Claims Deputy's determination in the mail.[88] The UIAB denied the appeal.[89] The Superior Court affirmed the UIAB's denial, citing the rule established in *Funk* that the claimant's alleged failure to receive notice does not alter the statutory appeals period unless the mailing fails to reach the claimant due to an error by the Department of Labor.[90]

Specifically concerning hospitalization, Delaware courts have consistently declined to find that the Board abused its discretion in denying a late appeal when the claimant's reason was hospitalization. In *Bruner v. UIAB*, the Claims Deputy's decision was mailed on June 25, 2008, and the claimant was given a July 5 deadline to appeal.[91] The claimant did not mail his appeal to the Appeals Referee until August 27, 2008.[92] The claimant argued that his tardiness should be excused because he was assaulted on June 22, 2008 and subsequently hospitalized until July 4, 2008.[93] After being released from the hospital, the claimant lived with his parents while recovering, not returning to his home address until July 15.[94] The claimant contended that he did not see the notice until he returned home on July 15.[95] The Appeals Referee denied the appeal on the grounds of untimeliness, and the denial was affirmed by the UIAB.[96] The Appeals Referee "noted that [the claimant's] injury was not a proper mitigating circumstance to allow any waiver of the timeliness requirements," and that "despite his injury, [the claimant] returned home

---

[87] *Id.* at *2.
[88] *Id.*
[89] *Id.*
[90] *Wilson*, 1993 WL 590326 at *2.
[91] *Bruner v. UIAB*, 2009 WL 5177164, *1 (Del. Super. Ct. Nov. 2, 2009).
[92] *Id.*
[93] *Id.*
[94] *Id.*
[95] *Id.* at *2.
[96] *Id.*

12

for a 'substantial period of time' before finally mailing his appeal."[97] The Superior Court found that the decision of the UIAB in affirming the Appeals Referee's denial on these grounds was reasonable and that the circumstances did not require the Board to override the Appeals Referee's decision "in the interests of justice."[98]

In *Myers v. Brandywine Body Shop*, the claimant was three days late in appealing the Appeals Referee's decision to the UIAB.[99] The claimant argued that his tardiness should be excused due to a series of unfortunate personal events: His sister had died a few days before the Appeals Referee's decision was mailed; his father had been hospitalized; the claimant himself had been hospitalized; and his two cats and his dog had died.[100] The claimant attached his sister's obituary and a receipt for the cremation of one of his cats to the UIAB appeal.[101] The UIAB reviewed the file and denied the appeal, and the claimant appealed to Superior Court.[102] The court held that the UIAB did not abuse its discretion; the UIAB found, and the claimant did not rebut, that the untimely appeal was not the result of a Department of Labor error.[103] The court explained that the list of deaths and illnesses, while unfortunate, were not such as would require review "in the interests of justice."[104] Further, the court noted that the claimant did not provide the UIAB with the dates of his and his father's alleged hospital stays or any supporting evidence of these hospital stays.[105]

*Funk* and *Wilson* make clear that administrative error by the Department of Labor, if demonstrated by the claimant, would be a reason to accept an untimely unemployment insurance

---

[97] *Bruner*, 2009 WL 5177164 at *2.
[98] *Id.*
[99] *Myers v. Brandywine Body Shop*, 2009 WL 2714079, *1 (Del. Super. Ct. Aug. 26, 2009).
[100] *Id.*
[101] *Id.*
[102] *Id.*
[103] *Id.* at *2
[104] *Id.*
[105] *Myers*, 2009 WL 2714079 at *2.

13

appeal.[106] However, Delaware courts have routinely declined to find that untimely appeals due to illness must be heard.[107]

Like the claimant in *Bruner*, Honaker argues that his appeal was late because he was in the hospital. Honaker did not go into the hospital until the fourth day after the decision was mailed. There is nothing in the record that indicates whether Honaker received the decision before he entered the hospital. But even if he did not receive it, like the claimant in *Bruner*, the UIAB is within its authority to dismiss the appeal as untimely. Further, unlike in *Bruner* where the hospitalization was the result of an assault, Honaker went into the hospital for knee surgery, which Honaker has not alleged was an emergency.[108]

The length of the claimant's delay in filing the appeal is also not grounds for this Court to reverse the decision of the UIAB. The claimant in *Myers*, like Honaker, was only a few days late appealing the Appeals Referee's decision to the UIAB. The claimant in *Myers*, like Honaker, told the Board that his appeal was late due in part to his own hospitalization. However, unlike Honaker, the claimant in *Myers* cited several additional traumatic events, including the death of his sister, his father's hospitalization, and the deaths of three pets; and he provided documentation of two of these events (his sister's death and the cremation of one of his pets) to

---

[106] *See Funk*, 591 A.2d at 225; *Wilson*, 1993 WL 590326, *2.

[107] *See Bruner*, 2009 WL 5177164; *Myers*, 2009 WL 2714079.

[108] Honaker did not submit any supporting documentation concerning his hospitalization to the UIAB. Honaker has attached documents to his opening brief in the instant appeal supporting his hospitalization and subsequent stay in a rehabilitation facility for the knee surgery performed on October 20, 2014. (In his UIAB appeal, Honaker mistakenly says the date of hospitalization was October 21, 2014.) The submitted documents suggest that the knee surgery was due to a suspected infection in the knee but do not demonstrate that the surgery was an emergency. Further, even if the recently submitted documents did show that it was an emergency, this Court could probably not take that into consideration as this evidence was not before the UIAB. *See Tibbits,* 2012 WL 6849444 at *1 (holding that the court's appeal is limited to the record before the Board).

the Board.  The *Myers* court still found that "the interests of justice" did not require the UIAB to set aside the claimant's tardiness and grant review.[109]

## V. CONCLUSION

Mindful of the extremely deferential standard under which the Superior Court reviews decisions of the UIAB, the Court **AFFIRMS** the Board's decision.  The delay was not the product of any error by the Department of Labor.  Nor were Honaker's circumstances, while unfortunate, more extreme than those in *Bruner* or *Myers* such that Honaker's case would require a different result.  The Board did not abuse its discretion in declining to hear Honaker's appeal.


**IT IS SO ORDERED.**


_____/s/_____
**M. JANE BRADY**
Superior Court Judge

---

[109] *Myers*, 2009 WL 2714079 at *2.