## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| EVELYN MAE RUST GREGG, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. S15A-07-001 MJB |
| | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Appellee. | ) | |

## OPINION

**Submitted:** July 22, 2016
**Decided:** August 29, 2016

*Upon Appellant's Appeal from the Delaware Insurance Commissioner's Decision*, **AFFIRMED.**

John F. Brady, Esq., The Brady Law Firm, 240 North James Street, Suite 106, Wilmington, Delaware 19804, *Attorney for Appellant*.

Lynn A. Kelly, Esq., Deputy Attorney General, Carvel State Office Building 820 North French Street, 6th Floor, Wilmington, Delaware 19801, *Attorney for Appellee*.

**BRADY, J.**

## I. INTRODUCTION

This is an appeal from a decision of the Delaware Insurance Commissioner (the "Commissioner") denying Evelyn Mae Rust Gregg's ("Appellant") application for line of duty benefits as a result of the death of her husband, Chief of Georgetown Police Department, Harvey A. Gregg, Jr. ("Chief Gregg").[1] On December 19, 2014, a hearing was held before Leonard S. Togman, Esquire (the "Hearing Officer") who recommended that the Commissioner deny death benefits.[2] On June 9, 2015, the Commissioner adopted the Hearing Officer's recommendation and issued a Final Decision and Order denying Appellant death benefits.[3] On July 7, 2015, Appellant filed a timely appeal[4] and on November 14, 2015, submitted an Opening Brief.[5] On November 17, 2015, the State of Delaware Insurance Coverage Office filed an Answering Brief[6] to which Appellant responded on December 2, 2015.[7] On April 18, 2016, the Court held an office conference with regard to the matter and permitted the parties to submit additional briefing on the issue of standing.[8] On June 3, 2016, Appellee filed its submission on the issue of standing[9] and on July 22, 2016, Appellant filed hers.[10] For the reasons stated below, the Commissioner's decision is **AFFIRMED**.

---

[1] Notice of Appeal, Item 1 (July 7, 2015).
[2] *See* Recommended Findings and Decision, Ex. to Appellant's Notice of Appeal, Item 1 (July 7, 2015).
[3] Final Order and Findings of Fact, Ex. to Appellant's Notice of Appeal, Item 1 (July 7, 2015).
[4] Notice of Appeal, Item 1 (July 7, 2015).
[5] Opening Brief, Item 13 (Nov. 4, 2015).
[6] Answering Brief, Item 14 (Nov. 17, 2015).
[7] Reply Brief, Item 15 (Dec. 2, 2015).
[8] *See* Scheduling Order, Item 18 (April 18, 2016).
[9] Appellant's Supplemental Br., Item 19 (June 3, 2016).
[10] Appellee's Supplemental Br., Item 20 (July 22, 2016).

## II. FACTUAL & PROCEDURAL BACKGROUND

On April 2, 1998, Chief Gregg was on duty, directing traffic on the Circle in Georgetown for a funeral when he collapsed.[11] Chief Gregg was transported to Beebe hospital where he died two days later, on April 4, 1998.[12]

Corporal Mark Rogers ("Corporal Rogers") testified at the hearing that he was on his way home and had entered the Circle in Georgetown when he saw Chief Gregg standing behind his patrol car in his police uniform.[13] Corporal Rogers further testified that he waved to Chief Gregg and did not recall seeing traffic from a funeral.[14] Corporal Rogers exited the Circle after seeing Chief Gregg and was approximately a mile away when he received a page from the fire company that there was an unconscious subject on the Circle.[15] Corporate Rogers turned around to assist and when he arrived an ambulance was on the scene.[16] Corporal Rogers further testified that the unconscious individual was Chief Gregg and that he assisted the ambulance personnel in getting the stretcher out of the ambulance.[17]

At the hearing, Dr. Lincoln Collins ("Dr. Collins") an anatomic clinical and forensic pathologist, testified that the cause of Chief Gregg's death was ventricular fibrillation due to acute myocardial infraction and probably atherosclerotic heart disease.[18] Dr. Collins opined that Chief Gregg died from natural causes following a heart attack.[19] This opinion was consistent

---

[11] *See* Final Order and Findings of Fact, Ex. to Appellant's Notice of Appeal at 4, Item 1 (July 7, 2015).
[12] *Id.*
[13] Hr'g Tr., Ex. 10 to R. on Appeal, at 42-43, Item 7 (Sept. 25, 2015).
[14] *Id.*
[15] *Id.* at 43-44.
[16] *Id.*
[17] *Id.* at 44.
[18] *Id.* at 99-100.
[19] *Id.* at 100.

with the cause of death noted in the death certificate. The death certificate also noted that "brain death" contributed to the cause of death.[20]

On April 3, 1998, Chief Gregg underwent a computerized axial tomography scan ("CAT scan") which indicated that he had an extremely large right subdural hematoma and evidence of intracranial blood in the right occipital lobe and also diffuse subarachnoid blood.[21] The CAT scan further indicated that there was a massive midline shift towards the left and there was evidence of downward transtentorial herniation.[22] Dr. Collins testified that the bleeding of Chief Gregg's brain and other brain injuries were the result of Chief Gregg being kept alive and would likely not have occurred otherwise.[23] Dr. Collins concluded that Chief Gregg's death was the result of cardiac symptoms and not neurologic symptoms.[24] Dr. Collins noted that his opinion was supported by the fact that there was no bruising on Chief Gregg's face or head and that there was no bleeding from any part of Chief Gregg's body after the incident.[25]

Debra Lawhead ("Lawhead") an administrator at the State of Delaware Insurance Coverage Office, testified at the hearing.[26] Lawhead testified that her office pays certain benefits pursuant to Delaware statutes, such as the line of duty disability and line of duty death benefits.[27] Lawhead further testified that her office approves payments from a self-insured fund and has the ability to either contest or not contest payments of line of duty death benefits.[28]

---

[20] Death Certificate, Ex. 4 to R. on Appeal, at 2 (Sept. 25, 2015).
[21] Hr'g Tr., Ex. 10 to R. on Appeal, at 89-91, Item 7 (Sept. 25, 2015).
[22] *Id.* at 91-92.
[23] *Id.* at 100-01.
[24] *Id.* at 98-100.
[25] *Id.* at 97.
[26] *Id.* at 130.
[27] *Id.* at 131.
[28] *Id.* at 132-33.

### III. THE COMMISSIONER'S DECISION

Subsequent to Chief Gregg's death the Delaware General Assembly passed an amendment to 18 *Del. C.* §§ 6601 and 6602 which provides that a death from natural causes is not a death in the line of duty except if the death was the proximate result of a heart attack while the officer was engaged in nonroutine stressful or strenuous physical activity. The law further provides that there is no statute of limitations for a claim for death in the line of duty benefits, and that the amended statute "shall be applicable to all claims for benefits for death in the line-of-duty occurring on or after July 1, 2005." [29] The Commissioner held that these amendments were not applicable to this claim because Chief Gregg died in 1998. The Commissioner further found that Chief Gregg had died of natural causes after suffering a heart attack on April 2, 1998, while on duty as Chief of Police of Georgetown, Delaware, and concluded that his death was not a "death in the line of duty" pursuant to the version of 18 *Del. C.* § 6601 in effect at the time of his death.[30] The Commissioner, therefore, held that Appellant was not entitled to benefits.[31] The Commissioner also held that Appellant's petition was barred by the statute of limitations set forth in 10 *Del. C.* § 8106[32] because it was filed more than fifteen years after Chief Gregg's death.[33] The Commissioner was not persuaded by Defendant's argument that the Insurance Coverage Office lacked standing to challenge appellant's claim, and ruled that, under 18 *Del. C.* § 6539, the Insurance Coverage Office was charged with the responsibility of adjusting all claims and

---

[29] *See* 18 *Del. C.* § 6602.
[30] Recommended Findings and Decision, Ex. to Appellant's Notice of Appeal at ¶9, Item 1 (July 7, 2015). The Commissioner adopted and incorporated by reference the Hearing Officer's recommendation in their Final Decision and Order. *See id.*
[31] *Id.* at ¶11.
[32] 10 *Del. C.* § 8106 provides a three year statute of limitations applicable to actions "based on a statute". 10 *Del. C.* § 8106(a).
[33] Recommended Findings and Decision, Ex. to Appellant's Notice of Appeal at ¶14, Item 1 (July 7, 2015).

paying all losses related to risks covered by the Fund and therefore they were a proper party in this matter.[34]

## IV. PARTIES' CONTENTIONS

### A. Appellant's Contentions

Appellant argues that the Insurance Coverage Office does not have standing to challenge a claim that an employee died in the line of duty, and that 18 *Del. C.* § 6601 provides such a right to the employer, not to the Insurance Coverage Office.[35] Appellant further argues that 18 *Del. C.* § 6508 provides a list of the Insurance Coverage Office's duties and that the duties listed do not include challenging a claim that an employee died in the line of duty.[36] Appellant notes that the Town of Georgetown did not rebut the claim, rather it recognized that Chief Gregg had died in the line of duty by including him on a memorial wall.[37] Appellant further notes that Mayor Bill West testified before the hearing officer and indicated his view that Chief Gregg had died in the line of duty.[38]

Next, Appellant argues that her claim is not barred by the statute of limitations.[39] Appellant contends that because, the Delaware General Assembly amended 18 *Del. C.* § 6602 to expressly state that there was no statute of limitations for a claim for death in the line of duty benefits, that amendment should govern this claim.[40] In the alternative, Appellant argues that the Delaware Superior Court decision in *Johnson v. Williams*,[41] should control.[42] *Johnson* held that the three year statute of limitations does not begin to accrue until "a reasonable person, in

---

[34] *Id.* at ¶16.
[35] Opening Br., Item 13, at 4 (Nov. 4, 2015) (citing 18 *Del. C.* § 6601); Reply Br., Item 15, at 4-6 (Dec. 2, 2015).
[36] Reply Br., Item 15, at 4-5 (Dec. 2, 2015) (citing 18 *Del. C.* § 6508).
[37] Opening Br., Item 13, at 4 (Nov. 4, 2015); Reply Br., Item 15, at 5 (Dec. 2, 2015).
[38] Opening Br., Item 13, at 4-5 (Nov. 4, 2015); Reply Br., Item 15, at 5-6 (Dec. 2, 2015).
[39] Opening Br., Item 13, at 8-10 (Nov. 4, 2015); Reply Br., Item 15, at 9-11 (Dec. 2, 2015).
[40] Opening Br., Item 13, at 8 (Nov. 4, 2015) (citing 18 *Del. C.* § 66); Reply Br., Item 15, at 9 (Dec. 2, 2015) (citing 18 *Del. C.* § 66).
[41] *Johnson v. Williams*, 728 A.2d 1185, 1188 (Del. Super. Ct. 1998).
[42] Opening Br., Item 13, at 8-10 (Nov. 4, 2015); Reply Br., Item 15, at 9-11 (Dec. 2, 2015).

6

claimant's position, should have recognized the nature, seriousness, and probable compensable character of his injuries as qualifying him for available disability benefits."[43]  Appellant argues that a reasonable person would not have recognized the probable compensable character of Chief Gregg's death until Chief Gregg's death was characterized as a death in the line of duty.[44] Appellant contends that this did not occur until 2012, when the State recognized it as such by placing Chief Gregg's name on the memorial wall.[45]  Appellant argues that the statute of limitations therefore did not start to accrue until 2012 and, as a result, the claim was timely filed.[46]

Appellant argues that the Commissioner's finding that Chief Gregg died from natural causes was not supported by substantial evidence.[47]  Appellant notes that brain death is listed on the death certificate as contributing to Chief Gregg's cause of death.[48]  Appellant argues that if brain function and brain injury were found to be a cause of Chief Gregg's death then such a finding would permit the award of death in the line of duty benefits.[49]  Appellant further argues that such a finding is supported by substantial evidence.[50]  Specifically, Appellant notes that Dr. Collins testified that Chief Gregg's heart was functioning upon his arrival at Beebe Hospital, that doctors were looking at the brain function as being the "big issue," and that doctors were hopeful that Chief Gregg's brain function would improve.[51]  Appellant further argues that substantial

---

[43] Opening Br., Item 13, at 9 (Nov. 4, 2015) (quoting *Johnson v. Williams*, 728 A.2d 1185, 1188 (Del. Super. Ct. 1998); Reply Br., Item 15, at 10 (Dec. 2, 2015) (quoting *Johnson*, 728 A.2d at 1188).
[44] Opening Br., Item 13, at 9-10 (Nov. 4, 2015); Reply Br., Item 15, at 10-11 (Dec. 2, 2015).
[45] Opening Br., Item 13, at 9-10 (Nov. 4, 2015); Reply Br., Item 15, at 10-11 (Dec. 2, 2015).
[46] Opening Br., Item 13, at 10 (Nov. 4, 2015); Reply Br., Item 15, at 11 (Dec. 2, 2015).
[47] Opening Br., Item 13, at 11-12 (Nov. 4, 2015); Reply Br., Item 15, at 7-8 (Dec. 2, 2015).
[48] Opening Br., Item 13, at 11 (Nov. 4, 2015); Reply Br., Item 15, at 7 (Dec. 2, 2015).
[49] Opening Br., Item 13, at 11 (Nov. 4, 2015); Reply Br., Item 15, at 7 (Dec. 2, 2015).
[50] Opening Br., Item 13, at 11-12 (Nov. 4, 2015); Reply Br., Item 15, at 7-8 (Dec. 2, 2015).
[51] Opening Br., Item 13, at 11-12 (Nov. 4, 2015); Reply Br., Item 15, at 7-8 (Dec. 2, 2015).

evidence did not exist to support a finding that Chief Gregg died from natural causes because "the fall after the heart attack could have caused the brain injury that led to the brain death."[52]

## B. Appellee's Contentions

Appellee argues that 18 *Del. C.* § 6539 provides "wide discretion to the Insurance Coverage Office to administer self-insurance claims, specifically line of duty death claims in conformity with accepted practice in the commercial insurance industry."[53] Appellee contends that 18 *Del. C.* § 6601 does not explicitly exclude the State Insurance Coverage Office from contesting the validity of death in the line of duty benefit claims.[54] Appellee further argues that there are three potential parties that could defend the Insurance Commissioner's decision on appeal: (1) the Georgetown Police Department as the employer; (2) the Insurance Commissioner as the administrative agency issuing the final decision; and (3) the Insurance Coverage office as the agency paying any benefits.[55] Appellee contends that even if the Insurance Coverage Office is not a proper party to this suit, "the Insurance Commissioner remains a party to the litigation and viable to defend its final decision and order."[56]

Appellee argues that Appellant's claim is barred by the statute of limitations.[57] Appellee contends that the amended version of 18 *Del. C.* § 6601, which expressly states that there is no statute of limitations, is inapplicable because the amendment provides that it is only applicable to claims where the death occurred on or after July 1, 2005.[58] Chief Gregg died in 1998 and Appellee therefore argues that the previous version of 18 *Del. C.* § 6601 and relevant case law is

---

[52] Reply Br., Item 15, at 8 (Dec. 2, 2015).
[53] Answering Br., Item 14, at 16-17 (Nov. 17, 2015) (citing 18 *Del. C.* § 6539).
[54] *Id.*
[55] Appellee's Supplemental Br., Item 20, at 5 (July 22, 2016).
[56] *Id.* at 7-8.
[57] Answering Br., Item 14, at 7-11 (Nov. 17, 2015).
[58] *Id.* at 9-10.

applicable.[59] Specifically, Appellee argues that pursuant to *Johnson*, a claim for death in the line of duty benefits is subject to a three year statute of limitations, which begins to accrue when a reasonable person would recognize the probable compensability of the injury.[60] Appellee argues that a reasonable person would have recognized the probable compensable nature of Chief Gregg's death on April 2, 1998, the date at which Chief Gregg had a heart attack while on duty in his police uniform.[61]

Appellant notes that the revised version of 18 *Del. C.* § 6601 provides that a death resulting from a heart attack is considered a death in the line of duty, but that the previous version did not.[62] Appellee argues that the previous version of 18 *Del. C.* § 6601 is controlling in this matter and that a death resulting from a heart attack is not considered a death in the line of duty.[63] Appellee further argues that the Commissioner's finding that Chief Gregg died of natural causes was supported by substantial evidence.[64] Specifically, Appellee notes that the undisputed medical testimony of Dr. Collins indicated that the cause of Chief Gregg's death was ventricular fibrillation due to hypertensive and probably atherosclerotic heart disease.[65] Appellee further notes that Dr. Collins testified that, in his medical opinion, Chief Gregg died of natural causes because there was no indication in the medical records of any other cause of death.[66]

## V. STANDARD OF REVIEW

"In an appeal from a board, Commissioner, or agency, Delaware courts defer to an agency's interpretation of statutes it is empowered to enforce if such interpretation is not 'clearly

---

[59] *Id.*
[60] *Id.* at 8 (citing *Johnson*, 728 A.2d at 1188).
[61] *Id.* at 10-11.
[62] *Id.* at 14.
[63] *Id.*
[64] *Id.* at 12-14.
[65] *Id.* at 13-14.
[66] *Id.*

9

erroneous.'"[67] The Court's review is limited to determine whether the agency "exercised its power arbitrarily or committed an error of law, or made findings of fact unsupportable by substantial evidence."[68] Substantial evidence is evidence that a reasonable person might find adequate to support a conclusion.[69] More specifically, substantial evidence requires less than a preponderance of the evidence, but "more than a mere scintilla."[70] The Court "shall take due account of the experience and specialized competence of the agency and the purposes of the basic law under which the agency has acted."[71] The Court does not "weigh evidence, determine questions of credibility, or make its own factual findings."[72]

## VI. DISCUSSION

### B. The Statute Of Limitations

Prior to the 2014 amendment of 18 *Del. C.* § 6602, the statute was silent with regard to the statute of limitations on a claim for deaths in the line of duty.[73] The current version of 18 *Del. C.* § 6602(b) states, in pertinent part, "[n]otwithstanding any law to the contrary, there shall be no limit on the period of time during which a person may submit a claim for benefits under this Chapter."[74] House Bill Number 372, which amended 18 *Del. C.* § 6602, states in Section 3, "[t]his Act shall be applicable to all claims for benefits for a death in the line of duty occurring on or after July 1, 2005."[75] Based on the language contained in House Bill Number 372, it was

---

[67] *Johnson*, 728 A.2d at 1188 (internal citations omitted).
[68] *Olney v. Cooch*, 425 A.2d 610, 613 (Del. 1981) (quoting *Kreshtool v. Delmarava Power and Light Co.*, 310 A.2d 649 (Del. Super. Ct. 1973)); *see also* 29 *Del. C.* § 10142(d).
[69] *Oceanport Indus. Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 899 (Del. 1994).
[70] *Mathis v. Delaware River and Bay Authority*, 2012 WL 5288757, at * 2 (Del. Super. Ct. Aug. 22, 2012) (quoting *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988)).
[71] 29 *Del. C.* § 10142(d).
[72] *Mathis*, 2012 WL 5288757, at *2 (citing *City of Newark v. Unemployment Ins. Appeal Bd.*, 802 A.2d 318, 323 (Del. Super. Ct. 2002)).
[73] 18 *Del. C.* § 6602 (2014).
[74] 18 *Del. C.* § 6602(b).
[75] House Bill No. 372, App. to Appellee's Answering Br., at 186-87, Item 14 (Nov. 17, 2015).

not clearly erroneous for the Commissioner to find that the prior version of 18 *Del. C.* § 6602 and relevant case law applied to Appellant's claim.

In *Johnson*, the petitioner was a volunteer fireman for the Wilmington Manor Volunteer Fire Company ("Wilmington Fire Company") and while in this capacity petitioner got trapped in a burning building and suffered severe injuries when a building wall fell on him.[76] The petitioner left the Wilmington Fire Company shortly thereafter and obtained a job with General Motors Assembly Plant for a short period of time.[77] GM subsequently terminated the petitioner's employment for failing to report to work and petitioner then found a job at Electrical Rebuilders, Inc., where he worked for approximately four years.[78] Following this job the petitioner worked in a part time capacity for approximately two years and was unemployed for approximately one year before filing a petition for line of duty disability benefits.[79] The hearing officer, applying the same version of 18 *Del. C.* § 6602 in effect at the time of Chief Gregg's death, concluded that a claim for line of duty disability benefits was an action based on a statute and therefore was subject to a three year statute of limitations.[80] The hearing officer's recommendation was subsequently adopted by the Commissioner.[81] This Court affirmed the Commissioner, finding no error in the Commissioner's determination that a claim for line of duty disability benefits was subject to a three year statute of limitation.[82] The Commissioner in *Johnson* further found that the statute of limitations begins to accrue "when a reasonable person, in claimant's position, should have recognized the nature, seriousness and probable compensable

---

[76] *Johnson*, 728 A.2d at 1187.
[77] *Id.*
[78] *Id.*
[79] *Id.*
[80] *Id.* at 1188-89; *see also* 10 *Del. C.* § 8106.
[81] *Johnson*, 728 A.2d at 1187.
[82] *Id.* at 1189.

11

character of his injuries as qualifying him for [benefits]."[83] This Court found that the Commissioner's interpretation of the statute was not clearly erroneous.[84]

In the case at bar, the Commissioner held that the statute of limitations began to accrue when Chief Gregg died on April 4, 1998.[85] Based on the evidence presented at the hearing there was substantial evidence for the Commissioner to conclude that a reasonable person would have known the probable compensability of Chief Gregg's death at the time of his passing. It is undisputed that Chief Gregg was the Chief of the Georgetown Police Department and was on duty, in uniform, directing traffic on the Circle in Georgetown for a funeral when he collapsed.[86] Based on this evidence, it is clear that Chief Gregg was on duty at the time the injury occurred which would have caused a reasonable person to recognize the *probable* compensable nature of such an event. The Court finds that the Commissioner's determination was supported by substantial evidence and free from legal error.

### B. The Commissioner's Determination That Chief Gregg Died Of Natural Causes Is Supported By Substantial Evidence

Although the determination on the statute of limitations is dispositive the Court also finds the Commissioner's determination that Chief Gregg died of natural causes is supported by substantial evidence. The only medical testimony was from Dr. Collins who concluded that Chief Gregg died from natural causes.

The Commissioner adopted the finding that Chief Gregg had died of natural causes after suffering a heart attack on April 2, 1998, while on duty as Chief of Police of Georgetown,

---

[83] *Id.* at 1190.
[84] *Id.* at 1191.
[85] Final Order and Findings of Fact, Ex. to Appellant's Notice of Appeal, Item 1 (July 7, 2015).
[86] *See id.* at 4. Neither Appellee nor Appellant dispute this fact in their briefs. *See* Opening Br., Item 13 (Nov. 4, 2015); *see also* Reply Br., Item 15 (Dec. 2, 2015); Answering Br., Item 14 (Nov. 17, 2015).

Delaware.[87] The Commissioner ruled that because Chief Gregg died of natural causes, his death was not a "death in the line of duty" within the meaning of 18 *Del. C.* § 6601, and therefore Appellant was not entitled to benefits.[88]

It is important to note at the outset that the circumstances of this case do not present conflicting expert opinions, each supported by substantial evidence, from which the Commissioner would be free to accept one expert's opinion over another.[89] Rather, only one expert, Dr. Collins, testified.[90] He opined that Chief Gregg died from natural causes following a heart attack.[91] Upon questioning, Dr. Collins' opinion was consistent with the cause of death noted in the death certificate.[92] The death certificate, however, also noted that "brain death" contributed to the cause of death.[93] Dr. Collins testified that the bleeding of Chief Gregg's brain and other brain injuries were the result of Chief Gregg being kept alive and would likely not have occurred otherwise.[94] Dr. Collins could not explain whether the subural hematoma or other brain injury caused Chief Gregg's death, however he explained that regardless of any head injuries the starting process was his cardiac arrest which supported his opinion that Chief Gregg died from natural causes.[95] After reviewing all relevant medical reports including the CAT scan, Dr. Collins opined that Chief Gregg's death was the result of cardiac symptoms and not neurologic symptoms.[96] Dr. Collins noted that his opinion was supported by the fact that there

---

[87] Recommended Findings and Decision, Ex. to Appellant's Notice of Appeal at ¶9, Item 1 (July 7, 2015). The Commissioner adopted and incorporated by reference the Hearing Officer's recommendation in their Final Decision and Order. *See id.*

[88] *Id.* at ¶11.

[89] *See, e.g., DiSabatino Bros., Inc. v. Worthman*, 453 A.2d 102, 106 (Del. Super. Ct. 1982) (noting that the Industrial Accident Board, like the Insurance Commissioner, is free to accept the testimony of one medical expert over another); *see also Downes v. State*, 623 A.2d 1142 (Del. Super. Ct. 1993).

[90] Hr'g Tr., Ex. 10 to R. on Appeal, at 100, Item 7 (Sept. 25, 2015).

[91] *Id.*

[92] Death Certificate, Ex. 4 to R. on Appeal, at 2 (Sept. 25, 2015).

[93] *Id.*

[94] Hr'g Tr., Ex. 10 to R. on Appeal, at 100-01, Item 7 (Sept. 25, 2015).

[95] *Id.* at 98-101.

[96] *Id.* at 98-100.

13

was no bruising on Chief Gregg's face or head after the incident and that there was no bleeding from any other part of Chief Gregg's body after the incident.[97]

The Commissioner was free to accept or reject Dr. Collins' testimony and, ultimately, made a ruling that was consistent with his opinion and testimony. Appellant's argument that there was substantial evidence to support a finding that Chief Gregg died from brain death rather than from cardiac symptoms, was not supported by expert opinion. Further, the Court's standard of review is limited to whether there is substantial evidence to support the Commissioner's findings. On appeal, this Court does not make its own factual findings, weigh the evidence, or determine questions of credibility.[98] Rather this Court's review is limited to whether the Commissioner's findings were supported by substantial evidence.[99] Based on Dr. Collins' testimony and the death certificate, the Court finds that the Commissioner's finding that Chief Gregg died from natural causes was supported by substantial evidence.

### C. Standing

All benefits paid as a result of a death in the line of duty are paid from the State Self-Insurance Fund.[100] The General Assembly, under 18 *Del. C.* § 6505, created the Insurance Coverage Office which is directed and supervised by the Director of the Office of Management and Budget and whose executive head is the Insurance Coverage Administrator.[101] The General Assembly subsequently listed twelve duties of the Insurance Coverage Office, including the "operation of the Self-Insurance Fund."[102] 18 *Del. C.* § 6539 states, in pertinent part, that "[t]he Insurance Coverage Office shall have the responsibility of adjusting all claims and paying all

---

[97] *Id.* at 97.
[98] *Olney*, 425 A.2d at 613 (quoting *Kreshtool*, 310 A.2d 649); *see also* 29 *Del. C.* § 10142(d).
[99] *Id.*
[100] 18 *Del. C.* § 6608.
[101] 18 *Del. C.* § 6505.
[102] 18 *Del. C.* § 6508.

losses in risks covered by the Fund, and shall carry out its duties in conformity with appropriate regulations promulgated for that purpose by the Administrator, which regulations shall be in general conformity with the accepted practice in the commercial insurance industries in such matters."[103]  Furthermore, 18 *Del. C.* § 6540 expressly states that "*[a]ny dispute between the Insurance Coverage Office and a claimant . . .* which cannot be amicably resolved, may be made the subject of litigation in any court of competent jurisdiction in this State."[104]

18 *Del. C.* § 6601 provides that when a person dies while on active duty a rebuttable presumption is created that such a death was a death in the line of duty and the burden of proof "shall be on the employer to demonstrate by a preponderance of the evidence that such death was not a death in the line of duty."[105]  In the instant matter, the Commissioner made no reference to a rebuttable presumption that Chief Gregg death was in the line of duty nor did the Commissioner make a finding that the employer demonstrated, by a preponderance of the evidence, that such death was not a death in the line of duty.[106]  However, Appellant's claim is nonetheless barred by the statute of limitations, which is dispositive in this matter.

## VII. CONCLUSION

The Court finds that the Commissioner's determination that Appellant's claim is barred by the statute of limitations was not clearly erroneous.  The Court further finds that the Commissioner's finding that Chief Gregg died from natural causes is supported by substantial evidence.  Specifically, the finding is supported by the expert testimony of Dr. Collins and the death certificate.  The Court finds that the Commissioner's holding that a death from natural

---

[103] 18 *Del. C.* § 6539.
[104] 18 *Del. C.* § 6540 (emphasis added).  This language clearly anticipates the Insurance Coverage Office having authority to make decisions adverse to a claim and to defend those decisions in litigation.
[105] 18 *Del. C.* § 6601(2).
[106] *See* Final Order and Findings of Fact, Ex. to Appellant's Notice of Appeal at 4, Item 1 (July 7, 2015).

causes is not compensable as a death in the line of duty pursuant to 18 *Del. C.* § 6601 was not clearly erroneous. Accordingly, the Commissioner's decision is **AFFIRMED**.

      **IT IS SO ORDERED.**

 

 

_____

**M. Jane Brady**
Superior Court Judge
