**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY**

CURTIS AIKEN JR., )
)
Appellant, )
)
v. )  C.A. No. N16A-04-008 JAP
)
S&T TRUCKING CO., )
MIKE ATACK, and )
UNEMPLOYMENT INSURANCE )
APPEAL BOARD, )
)
Appellees. )

**MEMORANDUM OPINION**

This is one of those rare cases where the court finds that a decision of the Unemployment Insurance Appeals Board is not supported by substantial evidence.

Mr. Aiken, an employee of S&T Trucking, was injured on the job and missed several months of work because of his injuries. When he was medically cleared to return to work, he reported to S&T Trucking where he was told there was no work for him because he had ostensibly quit. After several attempts to get his job back with S&T Trucking, Mr. Aiken began to look for work with other employers. The Board held that he was not eligible for unemployment benefits because he sought alternative employment rather than returning to work with S&T Trucking. The Board's conclusion is not supported by substantial evidence; indeed, it is supported by virtually no evidence at all. The

court therefore **REVERSES** the Board's decision and holds that Mr. Aiken is entitled to unemployment benefits pursuant to 19 *Del. C.* § 3314.

## Background

Mr. Aiken worked as a dump truck driver for S&T Trucking ("S&T") from June 23, 2014 until April 8, 2015 when he suffered a work-related injury. Mr. Aiken filed for and obtained Workers Compensation Benefits from S&T's carrier. For a few months he was completely disabled, but in July, 2015, he was cleared to return to S&T for clerical work. S&T told him, however, that it had no clerical work it could offer him, so Mr. Aiken remained off work. In September Mr. Aiken was cleared to return to work at his regular position with a one-day-on-two-day-off schedule. He again sought to return to work with S&T, but was told there was no work available which would accommodate his limited schedule. A month later, on October 22, Mr. Aiken was finally cleared to return to work on an unrestricted basis. He personally visited S&T to inform them of his full-time work clearance, only to be eventually told there was no work for him because he had ostensibly resigned. In fact, S&T was wrong about Mr. Aiken's purported resignation. Apparently someone associated with S&T's Workers Compensation carrier told S&T that Mr. Aiken would resign from S&T as part of his commutation agreement with the carrier. That agreement contains no such resignation.

Mr. Aiken was perplexed about his "resignation," and he continued to make unsuccessful efforts to straighten out the matter with S&T so he could get his job back. S&T, for its part, did not return Mr. Aiken's telephone calls

2

and inquiries because it was erroneously advised by its Workers Compensation carrier that it should not speak to Mr. Aiken while the Workers Compensation matter was being resolved. Eventually Mr. Aiken, who had a family to support, sought to find some sort of employment elsewhere.

The UIAB found that Mr. Aiken was not eligible for benefits because he failed to contact S&T for six weeks after being cleared for work and instead sought employment elsewhere. Specifically:

> The Board finds that Claimant voluntarily separated from his employment. The Claimant was cleared to return to work on October 22, 2015. The Appeals Referee found that Claimant failed to return to work for approximately 6 weeks from the date he was cleared. The Appeals Referee further found that Claimant sought employment elsewhere before deciding to return to the Employer. Claimant disputed those facts before the Board; however, a review of the record below [before the Appeals Referee] showed that Claimant did, in fact, testify under oath that he was trying to look for a job on his own. Based on this testimony and evidence, the Board finds that claimant did not return to work after being cleared because he was looking for alternative employment.

The Board interpreted this six-week gap as the functional equivalent of a voluntary termination without good cause. Consequently, Mr. Aiken was disqualified from receiving unemployment benefits pursuant to 19 *Del. C.* § 3314(1).

**Standard of Review**

In reviewing a decision on appeal from the UIAB, pursuant to 19 *Del. C.* § 3323(a), "the findings of the Unemployment Insurance Appeal Board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive,

3

and the jurisdiction of the Court shall be confined to questions of law." The function of the reviewing court is limited to determining whether substantial evidence supports the Board's decision regarding findings of fact and conclusions of law and is free from legal error.[1] Substantial evidence is that evidence from which an agency fairly and reasonably could reach the conclusion it did.[2]

When reviewing a decision on appeal from an agency, the Superior Court does not weigh the evidence, determine questions of credibility, or make its own factual findings.[3] The Court's responsibility is merely to determine if the evidence is legally adequate to support the agency's factual findings.[4] If the Board's decision is supported by substantial evidence, the Court must sustain the decision of the Board, even though it would have decided otherwise had it come before it in the *first* instance.[5]

## Analysis

The conclusions of both the Referee and the Board are unsupported by substantial evidence. In fact, they are contradicted by evidence from S&T. Because the court is convinced that the Board's conclusion is unsupported by substantial evidence, it will necessarily discuss the three key factual findings of the Board separately, and comment on their inaccuracies:

---

[1]    29 *Del. C.* § 10142(d).
[2]    *Olney v. Cooch*, 425 A.2d 610, 614 (Del. Super. 1981) (". . . it is more than a scintilla but less than a preponderance."); *Nat'l Cash Register v. Riner*, 424 A.2d 669, 674–75 (Del. Super. 1980).
[3]    *Canyon Constr. v. Trotter*, 2003 WL 1387137 (Del. Super. Mar. 5, 2003); *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).
[4]    29 *Del. C.* § 10142(d).
[5]    *Kreshtool v. Delmarva Power & Light Co.*, 310 A.2d 649, 653 (Del. Super. 1973).

4

1. *"The Appeals Referee found that Claimant failed to contact or return to work for approximately 6 weeks from the date he was cleared [to return to work]."*[6]

The Board noted that the Referee found that Mr. Aiken failed to contact or return to work for approximately six weeks. It difficult to understand what evidence supports this finding because the Board did not cite to the record in this regard. Rather, it simply referred to the blanket findings of the Appeals Referee. The uncontradicted record shows that Mr. Aiken contacted S&T the very day he was cleared to return to work, and the overwhelming (if not uncontradicted) evidence is that Mr. Aiken began to look for work elsewhere *only after* S&T did not respond to his repeated inquiries about restarting work.

According to Mr. Aiken, when he was cleared to return to work by his doctor on October 22, 2015 he went to S&T and spoke to an employee, a young lady named "Vicki."[7] She told Mr. Aiken that he needed to contact "Mike," presumably Michael Atack, who was S&T's only witness and representative.

> "I tried to call Mike and Mike never returned my call. I went to the office and talked to another guy named Mike and see what's going on. He never returned my call. I went up there myself and talked to Mike and Vicki, and nobody told me anything."[8]

While Michael Atack denied ever speaking to Mr. Aiken on October 22, there is no significance to this because (a) Mr. Atack testified he was not there, and (b) Mr. Aiken never said he spoke to Mr. Atack that day. What is of considerable significance, however, is Mr. Atack's testimony that Mr. Aiken came into the

---

[6] Bd. Op. at 2.
[7] Bd. Tr. 5.
[8] *Id.* at 5–6.

office at the end of October looking to return to work and S&T had no job for him:

> A month later, after speaking—after September 28th—
> he said he come in, in October, I'm not disputing that,
> asking for a job and we had no job for him.[9]

The Board did not refer to Mr. Atack's testimony in this regard.

The Board's conclusion that Mr. Aiken failed to contact S&T is also unsupported by the evidence. Mr. Aiken testified of making repeated attempts to contact S&T about returning to work to no avail.[10] In fact, his testimony is corroborated by S&T's representative. Mr. Atack acknowledged that Mr. Aiken was dropping off doctors notes at S&T:

> He did bring in doctor's notes all the time about his
> condition. * * * *[H]e did drop off notes*, I do know that
> because I have copies of them here.[11]

Mr. Atack also confirmed that Mr. Aiken telephoned him and he did not return Mr. Aiken's calls. In order to understand this, it is necessary to briefly consider some uncontested background information. At the time of many of these events Mr. Aiken's Workers Compensation claim with S&T's carrier had not been resolved, so the Carrier told S&T not to talk to him. Hence, S&T never returned his calls:

> The insurance company advised us not to speak to the
> employee because of the attorney-client privilege and
> the insurance company. That is the reason that I
> didn't return Mr. Aiken's calls.[12]

---

[9]  *Id.* at 11.
[10]  *Id.* at 6 (Mr. Aiken: "I tried everything, you know, and nobody ever got back to me.").
[11]  Ref. Tr. at 7.
[12]  *Id.* at 12–13.

6

Just as the Board did not consider Mr. Atack's testimony regarding Mr. Aiken's October 22 communications with S&T employees, the Board also did not address any of the above evidence regarding Mr. Aiken's subsequent efforts to return to S&T.

S&T's refusal to return Mr. Aiken's calls is also explained by S&T's mistaken belief that Mr. Aiken resigned as part of his Workers Compensation commutation agreement. Mr. Atack testified that "in that settlement, he resigned. Part of that settlement says he resigned,"[13] thus explaining why S&T did not offer him employment when he came to the company in the fall:

> I guess we assumed that this resignation—he was going to resign with the settlement. * * * And that was our impression. A month after, after speaking—after September 28th—he said he come in . . . asking for a job, and we had no job for him."[14]

Mr. Atack, believing that Mr. Aiken's resignation was a part of the settlement, faxed the Referee a copy of the settlement agreement. Nowhere in the agreement does it mention Mr. Aiken's tenure with S&T. Neither the Board nor the Referee included this fact in its analysis.

### 2. The Referee's conclusion Employer had a position for the Claimant.[15]

An essential, but unspoken element in the Board's analysis is that S&T had a position available for Mr. Aiken when he was cleared to return to work.

---

[13] *Id.* at 7. There is similar testimony from Mr. Atack elsewhere in the record. At another point the Referee asked him "your testimony is that it was part of the settlement that he essentially voluntarily quit?" whereupon Mr. Atack responded "yes." *Id.* at 8.
[14] Bd. Tr. at 11.
[15] Ref. Op. at 2.

There is no evidence, however, that S&T had a position available for Mr. Aiken.

As mentioned earlier, Mr. Atack testified that S&T had no job for Mr. Aiken:

> A month later, after speaking—after September 28th—
> he said he come in, in October, I'm not disputing that,
> asking for a job and *we had no job for him.*[16]

Further, at the hearing before the Referee, Mr. Atack testified:

> Somewhere along the line, from the day of the accident
> to the day of his settlement [the Workers'
> Compensation commutation in November], there was
> an improvement in his health and I believe he did call
> me and ask if there was any openings, any work
> available *and the only openings we had was in the
> tractor trailer division.*[17]

This is not evidence that S&T had a position available for Mr. Aiken.

Presumably drivers in S&T's tractor trailer division drive tractor trailers, and

the court takes judicial notice that in order to drive one, a driver must have a

Class A Commercial Driver's License. Importantly, Mr. Aiken was a dump

truck driver who need only possess a Class B Commercial Drivers License. The

only reasonable way this portion of Mr. Atack's testimony can be understood,

therefore, is that the only openings at S&T were for tractor trailer drivers and

Mr. Aiken's Class B license would not permit him to do that.

> *3. "The Appeals Referee further found that Claimant sought
> employment elsewhere before deciding to contact the Employer."*[18]

The Referee found that Mr. Aiken did not contact S&T until after he

sought employment elsewhere and was unable to find any.[19] The evidence does

---

[16] Bd. Tr. at 11.
[17] Ref. Tr. at 8.
[18] Bd. Op. at 2.

8

not support this finding. In fact, the only evidence presented on this point was that Mr. Aiken, who had a family to feed, was forced to look for other employment when he was told by S&T that he had resigned and there was no work for him:

> A: I was told that someone said I voluntarily quit my job and I didn't voluntarily quit my job. * * * I need my job. I didn't voluntarily—I got a family to take care of. I wouldn't do that.
>
> * * *
>
> Q [By Mr. Atack]: [I]f someone needed a job and they was employable and they hadn't resigned, why did it take them literally 5-6 weeks to contact us about employment. I mean, I think if it was me, I'd be there the next day.
>
> A: Well, I was trying to look for a job on my own. * * * I couldn't find a job, so I had no choice, but to do what I had to do. I got a family to take care of, bills to pay and you know. I didn't want to do it, but I had to do what I had to do.[20]

Absent evidence to the contrary—as is the case here—Mr. Aiken, in addition to continuing to contact S&T in an effort to get his job back, was forced to look for work only because of S&T's failure to communicate.

## Conclusion

The court finds there is virtually no substantial evidence, let alone substantial evidence, to support the Board's finding that Mr. Aiken tried to find alternative employment for six weeks and only contacted S&T after he was unable to do so. Rather, the virtually uncontested evidence shows that:

---

[19] The Referee held that "Claimant failed to contact or return for approximately 6 weeks. Claimant sought employment elsewhere before deciding to contact the Employer." (Ref. Op. at 2).

[20] Ref. Tr. 10–11.

    \*     Mr. Aiken contacted S&T the day he was cleared to return to work.

    \*     Mr. Aiken made several efforts to contact S&T after that.

    \*     S&T was told by its Workers Compensation carrier not to speak with Mr. Aiken.

    \*     S&T never returned Mr. Aiken's calls.

    \*     S&T erroneously believed that Mr. Aiken had resigned as part of his Workers Compensation commutation.

    \*     S&T did not have any positions available for Mr. Aiken.

The Delaware Supreme Court said it best in stating that "[a]lthough our standard of review of a decision by the Board is deferential, it is not altogether without teeth."[21] Substantial evidence is evidence from which an agency fairly and reasonably could come to the conclusion it did. No such evidence was adduced in this case. It therefore follows that the decision of the Board is **REVERSED**.

December 20, 2016

                                   John A. Parkins, Jr.
                                   Superior Court Judge

oc:   Prothonotary

cc:   Curtis Aiken Jr., *Pro Se* Litigant, Bear, Delaware
       S&T Trucking Co., Mike Atack, Bear, Delaware
       Paige J. Schmittinger, Esquire, U.I.A.B., Wilmington, Delaware

---

[21] *Murphy & Landon, P.A. v. Pernick*, 121 A.3d 1215, 1217 (Del. 2015).